OPINION
Defendant-appellant Jesse Jay Frank appeals from the July 30, 1998, Judgment Entry of the Morrow County Court of Common Pleas, Domestic Relations Division. Plaintiff-appellee is Laura Beth Frank.
STATEMENT OF THE FACTS AND CASE, Appellant Jesse Jay Frank and appellee Laura Beth Frank were divorced in 1993 after a nine year marriage. Two children were born as issue of the marriage: David Francis Frank, born 9/16/85 and Juliette Elizabeth Frank, born 8/10/87. An agreed Judgment Entry relative to the termination of the parties' marriage was filed on May 26, 1993. Pursuant to the terms of the agreed entry, appellee was designated as the residential parent and appellant was granted visitation. However, the appellant was granted placement of the children during the summer months (subject to alternate weekends and one evening per week with appellee). Appellant was to pay $1,000.00 per month total for child support and $1,000.00 per month for spousal support. Spousal support was to continue for 45 months but was subject to adjustment if child support was modified so that the $2,000.00 total for child support and spousal support would not be exceeded. The child support figure was based on a gross income of $100,000.00 per year for the appellant (self-employed osteopathic physician) and $12,000.00 per year for the appellee (imputed). From the guideline worksheet attached to the decree, the child support figure appears to be a deviation of $106.00 per month total. Each party was to "make good faith efforts at being fully employed at the maximum possible wage" but neither party was "required to work a night shift job or on weekends." The appellant was solely responsible for nearly all the marital debts which were substantial. They totaled over $209,683.00 plus whatever the Federal and State tax liability was for 1992. The parties owed over $54,000.00 for back taxes (Federal and State) for 1990 and 1991. The debt also included over $108,000.00 in loans for the appellant's education (osteopath). That money was used for school and for family living expenses. Also, included in the martial debt was a $4,000.00 shortfall from the sale of the marital residence. In November of 1993, the appellant took on a second job as an emergency room physician to help with the payment of martial debt. Appellant currently works 8:00 A.M. to 5:00 P.M. Monday, 1:30 to 5:00 P.M. Tuesday, 5:00 P.M. to 9:00 P.M. Thursday and 9:00 A.M. to 5:00 P.M. Friday at his private office. Appellant works a 24 hour shift at the emergency room on Wednesday and Saturday. Appellant does paperwork for his practice on Tuesday morning. Appellant currently grosses approximately $80,000.00 per year at his private practice (26.5 hours per week) and approximately $144,000.00 per year from the emergency room (48 hours per week). (This averages out to about $58.00 per hour.) Appellant remarried shortly after the divorce from appellee. Appellant made payments totaling $67,804.86 ($25,556 were medical school expenses) on the marital debt from the time of the divorce until December 6, 1995. However, appellant also chose to continue to avoid his Federal and State tax liabilities. The IRS began to levy bank accounts and paychecks of the appellant in 1994 or 1995. In December, 1995, appellant filed for bankruptcy (Chapter 13). At that time, appellant had a tax lien for $65,901.92 for 1994. He also owed $57,000.00 for 1995 (Federal and State tax), and an additional $11,967.92 for 1994. (This is in addition to $48,909.78 still owed for 1990 and 1991). The total amount of debt that the appellant planned to pay off through the Chapter 13 plan was over $343,000.00. Approximately 46.6% of this amount was debt incurred during appellant's marriage to appellee. The appellant, in his Chapter 13 plan, proposed to pay off the $343,000.00 in debt at $5,800.00 per month for 60 months. This amount was to be withheld from his wages. The appellee listed $28,421.22 per month as his projected income and $22,601.80 per month as his projected expenses, leaving $5,819.42 to pay through the Chapter 13 plan. The $22,601.80 in monthly expenses included monthly business expenses of $9,155.80. The monthly expenses also included $2,045.00 in child support and spousal support and $175.00 for two telephone lines (neither used for business) and $254.00 in a lease payment for a car for his stepdaughter. The latter two expenses were viewed by the trial court as unnecessary. Pursuant to an entry filed on October 31, 1994, appellant was designated residential parent every other month. Appellant was to receive a 50% deviation from recalculated guideline child support and he was to pay tuition and fees for the children at Gilead Christian School. A shared parenting plan setting out the every other month arrangement was adopted by a Judgment Entry of the trial court on December 6, 1994. A guideline worksheet was also filed on that date indicating child support, with the 50% deviation, would total $526.32 with poundage. The appellee requested an Administrative Modification Review of this amount because appellee objected to the fact the CSEA had not included appellant's income from his second job when calculating the child support modification. On August 7, 1995, the Child Support Enforcement Agency indicated in its written report that it could not modify the child support since the combined incomes of the parties exceeded $150,000.00. The CSEA set the matter for a hearing in the trial court. Prior to the evidentiary regarding the child support modification, the parties filed an agreed entry on October 20, 1995, designating appellee the residential parent at all times. The child support evidentiary was heard by a Magistrate. Pursuant to a Decision filed on December 10, 1996, the Magistrate found that appellant was employed in the emergency room of Morrow County Hospital, earning $100,064.00 per year. The Magistrate found that, in addition, appellant's annual overtime earnings at the emergency room totaled $28,439.53 and that appellant maintained a private medical practice, where he earned approximately $80,000.00 per year. In his December 10, 1996, decision, the Magistrate found that it was not in the best interests of the parties' minor children to include appellant's income from his second job at the emergency room for purposes of calculating child support since "this income is being used to pay the majority of debts which Defendant assumed as a result of the parties divorce." The Magistrate further found that a deviation from child support guidelines was justified, as appellant had filed for Chapter 13 bankruptcy in December of 1995. On December 24, 1996, appellee filed objections to the Magistrate's Decision. Appellant's objections were filed on January 27, 1997. Pursuant to a Judgment Entry filed on June 11, 1997, the trial court sustained appellee's objections to the Magistrate's report, finding that it was in the best interest of the children to include income from appellant's second job in the child support calculation. Further, the trial court found that because appellant continued to spend excessive amounts of money on vacations and other unnecessary things following the filing of bankruptcy, a deviation from the child support guidelines was not justified. The trial court specifically stated in its June 11, 1997, Judgment Entry as follows: "The Court finds, based upon the Magistrate's factual findings, that are not disputed by Defendant, that Husband, "although [he] has filed a bankruptcy, still took a vacation in Florida, retains a maid, leased a car for his step-daughter and appears to live a comfortable life style."
Appellant was ordered to pay to appellee the sum of $1,373.14 per child per month plus poundage, out of his income of approximately $28,000.00 per month. Appellant appealed from the trial court's June 11, 1997, Judgment Entry. Pursuant to an Opinion filed on June 5, 1998, in case number CA-855, this court held that the trial court erred in ruling on two of appellant's objections in the absence of a transcript of the proceedings. No transcript was before the trial court at the time it ruled on the objections to the Magistrate's Decision. This court, therefore, reversed the Judgment of the Morrow County Common Pleas Court and remanded the case sub judice to the trial court "with instructions to consider the objections to the Magistrate's report in accordance with the transcript of the proceeding, which is now a part of the record." After reviewing the transcript of the proceedings on remand, the trial court, pursuant to a Judgment Entry filed on July 23, 1998, once again sustained appellee's objection, holding that the Magistrate should have considered appellant's second income from the emergency room in determining child support. The trial court once again held that appellant was not entitled to a deviation in child support. On July 30, 1998, the trial court, due to its failure to attach the child support calculation to its July 23, 1998, Judgment Entry, re-issued such entry pursuant to Civ.R. 60(A). It is from the trial court's July 30, 1998, Judgment Entry that appellant prosecutes this appeal, raising the following assignments of error:
FIRST ASSIGNMENT OF ERROR
 THE COURT ERRED WHEN IT INCLUDED THE APPELLANT'S INCOME FROM A SECOND JOB FOR PURPOSES OF CALCULATING CHILD SUPPORT, WHERE THE SECOND JOB WAS TAKEN ON SOLELY BECAUSE OF APPELLANT'S ASSUMPTION OF THE MARITAL DEBTS.
SECOND ASSIGNMENT OF ERROR
 THE COURT ERRED WHEN IT FAILED TO ACCOUNT FOR THE REDUCED INCOME AVAILABLE TO THE APPELLANT OUTSIDE HIS BANKRUPTCY PLAN.
THIRD ASSIGNMENT OF ERROR
 THE TRIAL COURT ERRED BY ABUSING ITS DISCRETION BY FAILING TO PERMIT A DEVIATION FROM THE SUPPORT GUIDELINES AS CALCULATED BECAUSE THE AMOUNT CALCULATED WAS UNJUST, INAPPROPRIATE, AND NOT IN THE BEST INTERESTS OF THE CHILDREN.
FOURTH ASSIGNMENT OF ERROR
 THE COURT FAILED TO FOLLOW THE APPROPRIATE STATUTORY REQUIREMENT IN CALCULATING SUPPORT FOR PARENTS WITH COMBINED INCOMES OVER $150,000.00.
 I
Appellant, in his first assignment of error, maintains that the trial court erred in including appellant's income from his second job in calculating child support. Appellant, who began working two jobs in November of 1993, specifically contends that income from his job at the emergency room at Morrow County Hospital should not have been taken into account in calculating child support since that job was taken on solely because of appellant's assumption of the marital debts pursuant to the parties' May 26, 1993, Agreed Judgment Entry. At the time of the trial court's July 30, 1998, Judgment Entry, appellant was earning $100,064.00 a year working in the emergency room at Morrow County Hospital, not including average annual overtime earnings of $28,439.53. The standard of review of an appellate court in a domestic relations matter concerning child support is abuse of discretion. Booth v. Booth (1989), 44 Ohio St.3d 142, 144. In order to find an abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217. We must look to the totality of the circumstances in the case sub judice and determine whether the trial court acted unreasonably, arbitrarily or unconscionably. Upon review of the totality of the circumstances, we find that the trial court did not abuse its discretion in including appellant's income from his second job in calculating child support since such decision was not unreasonable, arbitrary or unconscionable. There is ample evidence in the record that the income from appellant's second job has not just been applied to pay off appellant's marital debts, but also has been used to afford appellant a higher lifestyle. At the hearing held on January 11, 1996, appellant testified that in 1995 he leased two cars in addition to paying for his stepdaughter's leased car. Testimony was also adduced during the hearing, which took place over several days, that appellant has a maid, two telephone lines and a hot tub, and took two trips to Florida, including one in June of 1996 which he testified cost roughly $3,000.00. Appellant's income has more than doubled since the time of the divorce, but it is clear that this increase in income has not all gone to pay marital debts. Appellant also maintains that, pursuant to R.C. 3113.215(A)(2), his second income should not be included in gross income for purposes of calculating child support since such income is "unsustainable". R.C.3113.215(A)(2) excludes "unsustainable income" from the definition of gross income for purposes of calculating child support contained in R.C. 3113.215(A)(1). Appellant specifically argues that, "at a nearly 90 hour per week work schedule," his emergency room income is unsustainable. This court, however, does not concur. As the trial court stated in its July 20, 1998, Judgment Entry:
 "Defendant has held this second job since 1993. This is not a part time endeavor for a few months. Defendant has a consistent work history at this second job and had enjoyed the income from this employment for several years prior to wife's request for modification."
Based on the foregoing, we do not find that the income from appellant's second job was "unsustainable". Since the trial court did not abuse its discretion in including appellant's income from his second job in calculating child support, appellant's first assignment of error is overruled.
 II
In his second assignment of error, appellant challenges the trial court's failure to account for the reduced income available to appellant outside of his bankruptcy plan. As is stated above, appellant filed for Chapter 13 Bankruptcy in December of 1995 after the IRS levied his accounts. In accordance with his bankruptcy plan, appellant is paying $5,800.00 per month which is deducted directly from his paycheck. Appellant specifically maintains that such sum should not be included in his gross income for purposes of calculating child support under R.C.3113.215(A)(1) since the above bankruptcy plan deduction is a "mandatory" deduction from wages and, therefore, is excluded from gross income under R.C. 3113.215(A)(2). Such section provides, in relevant part, that gross income "does not include amounts paid for mandatory deductions from wages other than taxes, social security, or retirement in lieu of social security, including but not limited to, union dues. . . ." However, we do not agree that a deduction under a bankruptcy plan is a mandatory deduction in the same nature as union dues. Union dues are a necessary expense of employment. The payment into the bankruptcy plan was necessitated largely by voluntary choices the appellant made to incur debt. He voluntarily incurred his own education expenses, failed to pay taxes and ran up credit card bills. Certainly medical bills are usually involuntarily incurred, but appellant chose to try to pay these bills through the Chapter 13 process. Therefore, we find that the mandatory wage deduction for the Chapter 13 payment plan is not similar to union dues. Moreover, appellant's current bankruptcy plan affords appellant protection from debts that either belong to his current wife, including the mortgage on her home and her medical bills, or debts that appellant has incurred since his divorce from appellee in addition to debts from his marriage to appellee. Included are an approximate $2,800.00 debt for a hot tub that appellant and his current wife purchased in 1994 as well as debts due to appellant's failure to meet his obligations to the IRS after the parties' divorce. Appellant failed, for example, to pay $45,000.00 in federal and $12,000.00 in state income taxes for 1995 and federal taxes for 1994. Therefore, it was not an abuse of discretion for the trial court to deny consideration of the total payment on the bankruptcy plan. Finally, as the trial court noted in its July 20, 1998, Judgment Entry: "Although husband filed bankruptcy he was still able to vacation in Florida at an approximate cost of $3,000.00 in 1996. . . . He retains the services of a maid, . . . pays for three leased vehicles, including one for a stepdaughter, who does not reside with the parties . . ., and contributes $100.00 per week of their income to the church . . ., all outside the bankruptcy."
Since, based on the foregoing, we cannot say that the trial court's refusal to account for the reduced income available to appellant outside of his bankruptcy plan was unreasonable, arbitrary or unconscionable, appellant's second assignment of error is overruled.
 III
In his third assignment of error, appellant claims the trial court abused its discretion by failing to permit a deviation from the child support guidelines. The trial court, in its July 30, 1998, Judgment Entry, refused to allow a deviation from the guidelines, finding that "[t]o allow a deviation in child support would reward husband, at his childrens' expense, for his own failure to meet his obligation to pay his taxes and to live within his means." Under R.C. 3113.215(B)(1), the amount of child support derived from the child support schedule and worksheet is rebuttably presumed to be correct. To deviate from the child support guidelines in the statute, the trial court must make findings of fact to support the deviation and must find that the statutorily prescribed amount is unjust or inappropriate and not in the best interest of the child. R.C. 3113.215(B)(1). "Any court-ordered deviation from the applicable worksheet and the basic child support schedule must be entered by the court in its journal and must include findings of fact to support such determination." Marker v. Grimm, 65 Ohio St.3d 139, 601 N.E.2d 496, paragraph three of the syllabus. A trial court has broad discretion in determining whether to deviate from child support guidelines. Bowman v. Bowman (Nov. 21, 1996), Franklin App. No. 96 APF 02-229, unreported. R.C. 3113.215(B)(3) sets forth factors the trial court may consider in determining whether a deviation is appropriate. Those factors include, but are not limited to, other court ordered payments and the standard of living and circumstances of each parent and the standard of living the child would have enjoyed had the marriage continued. Upon consideration of the evidence, we find that the trial court did not abuse its discretion in failing to permit a deviation from the child support guidelines since such decision was not arbitrary, unreasonable or unconscionable. The original decree ordered the appellant to pay $1,000.00 per month in spousal support and $1,000.00 per month in child support. That was based on a gross annual income (after business expenses) for the appellant of approximately $100,000.00. The order that we are reviewing is one for $2,746.00 per month for child support and zero dollars per month for spousal support and that is based on a gross annual income of $225,688.00 (after business expenses, local taxes and a self-employed FICA adjustment.) The appellant's income has more than doubled and his total obligation has increased by $746.00 per month. There is no doubt that the appellant's expenses have also increased, but the largest increase is based on his debt expense necessary to pay off the IRS for unpaid back taxes since his remarriage. And, as the trial court points out, the appellant could not "illuminate the court as to how those funds were spent." (Page 6 — 7/30/98 Judgment Entry). The appellant appears (from his monthly expenses) to live a fairly middle class lifestyle. There are no outrageous mortgages or car expenses and the "luxuries" are somewhat modest as luxuries go: a hot tub, two phone lines, three car payments and two trips to Florida. Certainly, nothing that would account for $50,000.00+ in unpaid taxes per year. Based on these considerations, we find that the trial court did not abuse its discretion when it denied the request to deviate from the child support guidelines. While it does appear from a review of the appellant's debt payment plan under the Chapter 13 bankruptcy that the appellant is unable to pay the additional $736.00 per month (plus poundage), a closer analysis is in order. First of all, the expenses listed on appellant's monthly expenses include a car payment for appellant's stepdaughter ($254) and two phone lines ($175), both of which the trial court found to be unnecessary and can be reduced or eliminated by the appellant. Secondly, the amount of monthly payment under the Chapter 13 plan on the appellant's debt can be modified. (Currently set at $5,800 per month.) The trial court does make a finding that we find troubling, however. On Page 5 of the July 30, 1998, Judgment Entry, the trial court states that "[t]he payment of the marital debt was a burden that [appellant] agreed to and apparently felt that he had the financial means to meet at the time of the parties' divorce." We find that it was just as likely that the appellant felt he could meet this burden by increasing the number of hours he worked and that he knew appellee would not be able to pay these debts. (Income was imputed to her at $12,000 per year at the time of the divorce for purposes of calculating child support.) In addition, there are valid arguments to be made for deviation under the circumstances in the case sub judice. For instance, even though appellant has continued to create much of his extraordinary debt problems by not paying his taxes, there could have been some consideration given to allow the appellant to have funds available for when he has companionship with his children. Also, a deviation that was calculated by excluding a portion of appellant's gross income from the child support guideline worksheet could have been a consideration. The trial court found that all of appellant's income should be included in the guideline calculation. However, a deviation computed by deducting a portion of the appellant's gross income from his total income figure would have been reasonable. This deduction would be limited to the amount of gross income needed to generate the net funds to pay reasonable and regular monthly payments on the marital debts. Only income in excess of that generated by a 40 hour work week would be subject to partial exclusion. And the exclusion would only be considered if the obligor had to take on the additional employment to make the payment of marital debt. However, our standard of review in this case is whether the trial court abused its discretion, and even though there were many options for the trial court under this set of facts, we cannot say that the trial court was unreasonable, arbitrary or capricious in setting the child support amount. Since the trial court's decision denying appellant's request for a deviation from the child support guidelines was not unreasonable, arbitrary or unconscionable, appellant's third assignment of error is overruled.
 IV
In his final assignment of error, appellant contends that the trial court failed to follow the appropriate statutory requirements in calculating support for parents with combined incomes over $150,000.00. According to appellant, throughout the three days of the hearing on appellee's request for an increase in child support, appellee failed to introduce any evidence of the needs and standard of living of appellant's children. R.C.3113.215(B) provides, in relevant part, as follows: "(2) In determining the amount of child support to be paid under any child support order, the court, upon its own recommendation or upon the recommendation of the child support enforcement agency, shall or the child support enforcement agency, pursuant to sections3111.20, 3111.211, and 3111.22 of the Revised Code, shall do all of the following:
(b) If the combined gross income of both parents is greater than one hundred fifty thousand dollars per year, the court or agency shall determine the amount of the obligor's child support obligation on a case-by-case basis and shall consider the needs and the standard of living of the children who are the subject of the child support order and of the parents."
At the hearing on September 5, 1996, appellee testified that the children's standard of living had been affected by the divorce. Appellee testified she had to "cut back in the way of clothing" for the children, that, due to a lack of money, she didn't take many trips to places like Cedar Point, and that the children had been denied access to their Christian school. Transcript of September 5, 1996, hearing at 52. Appellee also testified that she did not allot any money for entertainment. Based on appellee's testimony, this court finds that the trial court considered evidence as to the needs and standard of living of appellant's children. Appellant's fourth assignment of error is overruled.
The Judgment of the Morrow County Court of Common Pleas is affirmed.
By Edwards, J. Wise, P.J. and Hoffman, J. concur